IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MICHELLE M. SCAFIDI,                          Case No. 6:16-cv-00967-MA

                    Plaintiff,                OPINION AND ORDER

        v.

COMMISSIONER SOCIAL SECURITY
ADMINISTRATION,

                    Defendant.

DREW L. JOHNSON
1700 Valley River Drive
Eugene, OR 97405

JOHN E. HAAPALA, JR.
401 E. 10th Avenue, Suite 240
Eugene, OR 97401

        Attorneys for Plaintiff

BILLY J. WILLIAMS
United States Attorney
District of Oregon
JANICE E. HEBERT
Assistant United States Attorney
1000 S.W. Third Ave., Suite 600
Portland, OR 97204-2902

1 - OPINION AND ORDER

JORDAN D. GODDARD
Social Security Administration
Office of the General Counsel
701 Fifth Ave., Suite 2900 M/S 221A
Seattle, WA 98104-7075

    Attorneys for Defendant

MARSH, Judge

    Plaintiff Michelle M. Scafidi seeks judicial review of the final decision of the Commissioner

of Social Security denying her application for a period of disability and disability insurance benefits

("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-403, and denying her application

for Supplemental Security Income ("SSI") disability benefits under Title XVI of the Social Security

Act, 42 U.S.C. §§ 1381-1383f. This Court has jurisdiction pursuant to 42 U.S.C. §§ 405(g) and

1383(c)(3). For the reasons that follow, the decision of the Commissioner is affirmed.

## PROCEDURAL AND FACTUAL BACKGROUND

    Plaintiff protectively filed her DIB and SSI applications on March 22, 2012, alleging

disability beginning August 15, 2011, due to fibromyalgia, diabetes, heart disease, back and leg pain,

depression, arthritis, neuropathy, carpal tunnel syndrome, and degenerative disc disease. Tr. Soc.

Sec. Admin. R. ("Tr.") 259, ECF No. 12. Plaintiff's claims were denied initially and upon

reconsideration. Plaintiff filed a request for a hearing before an administrative law judge ("ALJ").

The ALJ held a hearing on August 29, 2014, at which Plaintiff appeared with her attorney and

testified. A vocational expert, Stephen R. Cardinal, also appeared at the hearing and testified. On

January 9, 2015, the ALJ issued an unfavorable decision. The Appeals Council denied Plaintiff's

request for review, and therefore, the ALJ's decision became the final decision of the Commissioner

for purposes of review.

2 - OPINION AND ORDER

Plaintiff was born in 1962, and was 49 years old on the alleged onset of disability date, and 52 years old on the date of the hearing. Plaintiff completed high school, and attended cosmetology school for two years. Tr. 26, 45, 751. Plaintiff has past relevant work as a meat wrapper and cook, and also has worked as a cashier, day care provider, and barista. Tr. 26, 45, 48.

## THE ALJ'S DISABILITY ANALYSIS

The Commissioner has established a five-step sequential process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920. Each step is potentially dispositive. The claimant bears the burden of proof at steps one through four. *See Valentine v. Commissioner Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At step five, the burden shifts to the Commissioner to show that the claimant can do other work which exists in the national economy. *Hill v. Astrue*, 698 F.3d 1153, 1161 (9th Cir. 2012).

The ALJ found that Plaintiff meets the insured status requirements through June 30, 2017. At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since her alleged onset of disability. At step two, the ALJ found that Plaintiff had the following severe impairments: obesity; diabetic peripheral neuropathy of the lower extremities; moderate carpal tunnel syndrome, status-post right side release; meralgia paresthetica; fibromyalgia; lumbar degenerative disc disease; cervical degenerative disc disease; well-controlled diabetes mellitus, status-post thyroid ablation; sleep apnea; depressive disorder; and panic disorder. At step three, the ALJ found that Plaintiff's impairments, or combination of impairments, did not meet or medically equal a listed impairment.

The ALJ assessed Plaintiff with a residual functional capacity ("RFC") to perform a range of light work with additional limitations:

> [Plaintiff] can lift 20 pounds occasionally, and 10 pounds frequently. [Plaintiff] can sit, stand, and walk, each up to 6 hours in an 8-hour workday for a combined total of 8 hours of activity. [Plaintiff] requires the option to changes positions from standing to seated three times an hour, while still performing essential tasks. [Plaintiff] can frequently handle; and frequently finger, and feel with the dominant, right upper extremity. [Plaintiff] can never climb ladders, ropes, or scaffolds. [Plaintiff] should not be exposed to hazards, such as unprotected heights, and large moving equipment. [Plaintiff] can never crawl. [Plaintiff] can frequently balance, and occasionally stoop, crouch, and kneel. [Plaintiff] is able to understand, remember, and carry out simple instructions in a setting with no more than occasional public contact.

Tr. 19.

At step four, the ALJ found that Plaintiff is unable to perform her past relevant work. At step five, the ALJ found that considering Plaintiff's age, education, work experience, and residual functional capacity, jobs exist in significant numbers in the national economy that Plaintiff can perform, including such representative occupations as: mail clerk, information router, and order filler. Alternatively, the ALJ found that if Plaintiff is limited to no more than occasional handling bilaterally, the following representative occupations are within Plaintiff's RFC and exist in significant numbers: wire worker, collater operator, and key cutter. Accordingly, the ALJ concluded that Plaintiff has not been under a disability under the Social Security Act from August 15, 2011 through the date of the decision.

## ISSUES ON REVIEW

On appeal to this court, Plaintiff contends the following errors were committed: (1) the ALJ improperly evaluated her testimony; (2) the ALJ improperly evaluated the opinions of treating physician Arezo Fathie, M.D., examining psychologist Alison Prescott, Ph.D., and examining

physician Alec Fedorov, M.D., and (3) the RFC fails to incorporate all of her limitations. The Commissioner argues that the ALJ's decision is supported by substantial evidence and is free of legal error. Alternatively, the Commissioner contends that even if the ALJ erred, Plaintiff has not demonstrated harmful error.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Berry v. Astrue*, 622 F.3d 1228, 1231 (9th Cir. 2010). "Substantial evidence is more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hill*, 698 F.3d at 1159 (internal quotations omitted); *Valentine*, 574 F.3d at 690. The court must weigh all the evidence, whether it supports or detracts from the Commissioner's decision. *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014); *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). The Commissioner's decision must be upheld, even if the evidence is susceptible to more than one rational interpretation. *Batson v. Commissioner Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). If the evidence supports the Commissioner's conclusion, the Commissioner must be affirmed; "the court may not substitute its judgment for that of the Commissioner." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001); *Garrison*, 759 F.3d at 1010.

## DISCUSSION

**I.     The ALJ Did Not Err in Evaluating Plaintiff's Credibility**

To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must perform two stages of analysis. 20 C.F.R. § 404.1529. The first stage is a

threshold test in which the claimant must produce objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012); *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). At the second stage of the credibility analysis, absent affirmative evidence of malingering, the ALJ must provide clear and convincing reasons for discrediting the claimant's testimony regarding the severity of the symptoms. *Carmickle v. Commissioner Soc. Sec. Admin.*, 533 F.3d 1155, 1166 (9th Cir. 2008); *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007).

The ALJ must make findings that are sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014); *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015). Factors the ALJ may consider when making such credibility determinations include the objective medical evidence, the claimant's treatment history, the claimant's daily activities, and inconsistencies in testimony.[1] *Ghanim*, 763 F.3d at 1163; *Tommasetti*, 533 F.3d at 1039.

At the hearing, Plaintiff testified that she takes a variety of medication for her ailments, and that they cause her to become fatigued. Tr. 57. Plaintiff testified that she takes pain medication for her feet, arms, and back, and that she takes clonazepam for her anxiety. Tr. 58.

---

[1] Social Security Ruling ("SSR") 16-3p eliminated the use of the term "credibility." However, SSR 16-3p became effective March 28, 2016. The Court has previously determined that SSR 16-3p does not apply retroactively because 42 U.S.C. § 405(g) does not contain any express authorization from Congress allowing the Commissioner to engage in retroactive rulemaking. *Smith v. Colvin*, No. 6:15-cv-01625-MA, 2017 WL 388814, at *4 n.2 (D. Or. Jan. 27, 2017). *See, e.g., Wright v. Colvin*, No. 15-cv-02495-BLF, 2017 WL 697542, *9 (N.D. Cal. Feb. 22, 2017) (holding SSR 16-3p does not apply retroactively); *Thayer v. Colvin*, No. 2:16-cv-00545-DWC, 2017 WL 132450, at *7 (W.D. Wash. Jan. 13, 2017) (same). The Court adheres to that rationale here. Therefore, because the ALJ's decision in this case was issued January 9, 2015 – well before the effective date – SSR 16-3p does not apply in this instance.

Plaintiff stated that she has not seen a counselor for her anxiety. Tr. 58. Plaintiff admitted that she has not seen a rheumatologist since being diagnosed with fibromyalgia. Tr. 59. Plaintiff testified that she is able to drive, but does so as little as possible, and that she averages driving three times a month. Tr. 60.

Plaintiff lives with her daughter who is 18. Tr. 61. Plaintiff described that she tries to cook, but relies on her daughter to perform the other household chores. Tr. 61. Plaintiff said that she can bathe herself and get dressed, but that she occasionally needs help from her daughter with a particular item of clothing. Tr. 62. Plaintiff testified that she drops things because of difficulty with her hands, and that she is having carpal tunnel release surgery soon after the hearing. Tr. 62. Plaintiff testified that she can lift three pounds. Plaintiff testified that she cannot lift a frying pan or the coffee pot. Tr. 63. Plaintiff estimated she could sit for 30 to 40 minutes before needing to get up, could stand for 10 minutes before needing to sit, and could walk for only 10 minutes. Tr. 63.

Plaintiff testified that she does not exercise, and spends the majority of her day lying down. Tr. 64. Plaintiff stated that her pain is typically at an eight on a 10 point scale, and that after taking narcotics, the pain is at six or seven. Plaintiff testified that her pain is worst in her toes, arms, hands, legs and back. Tr. 66. Plaintiff testified that she is unable to walk to the mailbox. Tr. 63, 68. Plaintiff noted that her pain is worse on her right side, and that her right leg tingles from her knee to her hip. Tr. 67. Plaintiff testified that the pain in her hands makes it difficult to hold a cup of coffee, work on the computer, or hold her cane. Tr. 69-70. Plaintiff estimated she could work on the computer for 10 minutes. Tr. 70.

In a May 5, 2012 Function Report - Adult, Plaintiff stated that she is completely debilitated by chronic pain and fatigue. Tr. 267. Plaintiff described that she has difficulty with self-care when

7 - OPINION AND ORDER

she is having a major flare with hands and arms. Tr. 268. Plaintiff stated that she occasionally needs

reminders to take her medications because she takes so many of them. Tr. 269. Plaintiff described

that she is able to do very light housework and laundry, but she does not fold. Tr. 269. Plaintiff does

not perform yard work. Tr. 270 Plaintiff stated that she leaves the house daily, is able to drive, and

she goes grocery shopping once per week. Tr. 270. Plaintiff also stated that she is home bound, and

is able to talk on the telephone and that her only hobby is watching television. Tr. 271. Plaintiff

described that her impairments affect her ability to lift, squat, bend, stand, reach, walk, sit, kneel,

climb stairs, memory, complete tasks, concentrate, and use her hands. Tr. 272. Plaintiff indicated

that she uses a cane and braces and splints for her carpal tunnel. Tr. 273.

In the decision, the ALJ offered several specific, clear, and convincing reasons for

discounting Plaintiff's testimony. *Brown-Hunter*, 806 F.3d at 488-89. First, the ALJ found

Plaintiff's inconsistent presentation to treating and examining providers occurring shortly after the

hearing significantly undermined her credibility. Inconsistencies in a Plaintiff's reports concerning

the severity of symptoms can be a clear and convincing reason to discount that testimony. *Burch v.

Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005); *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir.

2001) (upholding adverse credibility determination based on claimant's presentation at hearing, lack

of cooperation with examiners, inconsistent statements, and tendency to exaggerate). Here, the ALJ

detailed several discrepancies between Plaintiff's subjective complaints and the observations and

results of examining physician James Heder, M.D. Dr. Heder performed at physical evaluation on

September 23, 2014, approximately two weeks after the hearing. Tr. 737. As the ALJ accurately

indicated, Plaintiff brought a cane with her, yet Dr. Heder observed that Plaintiff walked into the

examination room without difficulty and easily transferred from the chair to the examination table.

Tr. 21, 23, 740. Additionally, as the ALJ noted, Dr. Heder noted that Plaintiff sat comfortably, was not in any acute distress, and easily removed her sandals. Tr. 21, 739. The ALJ discussed that during Dr. Heder's examination, Plaintiff complained of significant pain during toe and heel walking, and refused to hop or squat, yet her Romberg test was negative. Tr. 21. As the ALJ indicated, Dr. Heder specifically noted in his report that it was difficult to tell whether Plaintiff was providing full effort during the examination given her presentation, list of complaints, and refusal to perform certain examination tasks. Tr. 21, 741. The ALJ's findings are wholly supported by substantial evidence. Indeed, contrary to Plaintiff's hearing testimony that she is independent with self-care and needs only occasional help from her daughter, Plaintiff reported to Dr. Heder that she is "fully dependent" on her daughter to shower and get dressed. Tr. 61-62, 738. Additionally, as the ALJ discussed, Plaintiff informed Dr. Heder that she uses a cane for short walks and uses a rolling walker for longer distances, yet there are no objective findings of impaired strength or balance to support the use of a walker and one has not been prescribed by *any* provider. Tr. 23, 739. Based on the numerous discrepancies between Plaintiff's subjective complaints and her presentation to Dr. Heder, ALJ could reasonably discount Plaintiff's testimony. *See Chaudry v. Astrue*, 688 F.3d 661, 671 (9th Cir. 2012) (affirming adverse credibility determination based on claimant's non-prescribed use of a wheelchair and cane and less than full exertion during testing).

Second, the ALJ detailed numerous inconsistencies between Plaintiff subjective allegations and her presentation to examining psychologist Alison Prescott, Ph.D. Tr. 21. Dr. Prescott performed a psychodiagnostic evaluation of Plaintiff on October 7, 2014, some two weeks following Dr. Heder's evaluation and approximately five weeks after the hearing. Tr. 751. As the ALJ discussed, Plaintiff ambulated slowly and used a cane. Tr. 21, 752. The ALJ found this inconsistent

9 - OPINION AND ORDER

with Plaintiff's presentation two weeks prior to Dr. Heder, who observed that Plaintiff walked without difficulty and could transfer easily from the chair to the examination table. Tr. 21. Additionally, the ALJ detailed that Plaintiff provided inconsistent statements to Dr. Prescott regarding her hand functioning. Plaintiff informed Dr. Prescott that the carpal tunnel release surgery performed a month earlier "did not go well," her hands were numb, and that she cannot grasp or pick up any weight. Tr. 752. As the ALJ discussed, during post-operative testing performed by Dr. Heder just two weeks earlier, Plaintiff demonstrated normal motor strength, normal grip strength, normal ability to grasp large and small objects, with intact sensation to touch and pinprick in all fingers. Tr. 21, 741. The ALJ found that these inconsistencies "significantly diminish" Plaintiff's credibility. The ALJ findings are readily supported by substantial evidence in the record and provide specific, clear, and convincing reasons to discount Plaintiff's subjective allegations. *Tommasetti*, 533 F.3d at 1040.

Plaintiff's contends that the severity of her carpal tunnel symptoms and attendant limitations persisted after carpal tunnel release surgery, and that the ALJ erred in discrediting her on this basis. According to Plaintiff, on September 23, 2014, Robert Choi, M.D., Plaintiff's treating neurologist, found mild sensory deficits along the median nerve on the right and left side. Pl.'s Br. 18, ECF No. 13. Plaintiff suggests that Dr. Choi and Dr. Heder reached opposite conclusions concerning her hand functioning abilities post-surgery, yet they examined Plaintiff on the same day. Plaintiff's argument misses the mark. As Plaintiff correctly states, Dr. Choi's treatment note does state that Plaintiff has "mild sensory deficit along the median nerve distribution on the right hand." Tr. 802. However, that notation is contained in a paragraph referring to the "trochanteric bursa" or hip area, and the remainder of the note discusses Plaintiff's lower extremity complaints. Thus, the Court determines

the notation to a "right hand" sensory deficit is likely a typographical error. Moreover, Dr. Heder performed a series of tests of Plaintiff's gross and fine motor skills and limited Plaintiff to frequent handling, fingering, and feeling to account for her carpal tunnel symptoms. Tr. 742. Dr. Choi's notes do not reflect any such functional limitation testing of Plaintiff's right hand during his examination. Thus, even if the Court could interpret the evidence differently, the ALJ's interpretation of Dr. Heder's opinion of Plaintiff's hand functioning and Dr. Choi's treatment notes is rational and will not be disturbed. *Batson,* 359 F.3d at 1196.

Third, the ALJ detailed that the severity of Plaintiff's alleged walking limitations and alleged difficulty with hand functioning is not supported by the objective medical record. The lack of objective medical evidence to support a claimant's allegations can be a clear and convincing reason to discredit a claimant, so long as it is not the only reason. *Burch,* 400 F.3d at 680-81. As the ALJ accurately detailed, objective medical evidence elsewhere in the record further under undermines Plaintiff's allegations. To be sure, despite Plaintiff's allegations of dropping things, there is no objective medical evidence in the record of decreased grip strength, either before or after her surgery. Tr. 741, 829. Alec Fedorov, M.D., the physician who performed the carpal tunnel release surgery, found decreased sensation prior to surgery, but "[n]o weakness of grip strength or pinch strength." Tr. 829. After surgery, Dr. Fedorov's notes indicate she was healing well, could make a fist, and had "normal sensation in all fingers." Tr. 805. And, contrary to Plaintiff's allegation that surgery on her right arm was unsuccessful, Plaintiff inquired about performing the same surgery on her left arm. Tr. 802.

Furthermore, as the ALJ correctly indicated, Plaintiff's allegations to Drs. Heder and Prescott that she needs a walker at times is not supported objective medical evidence elsewhere in the record.

To the contrary, Plaintiff's treatment notes consistently reflect she was "ambulating normally," had a normal gait and station, and normal strength and tone in all extremities. *See, e.g.,* Tr. 417, 425, 440, 448, 470, 476, 480, 585, 595, 603, 610, 617, 626, 636, 643, 651, 661, 668, 678, 685, 692, 700. Additionally, repeated EMG/nerve conduction studies did not reveal radiculopathy (pain, numbness or weakness due to a compressed nerve in the spine), but rather mild peripheral neuropathy (tingling and numbness due to nerve damage) due to Plaintiff's diabetes. For example, in 2013, EMG/Nerve conduction studies showed some latency across Plaintiff's left thigh, but otherwise her peroneal and tibial motor nerve responses were normal bilaterally. Tr. 428-29.

In July 2014, Plaintiff met Dr. Choi for her continued complaints of leg and hip pain and numbness, as well as carpal tunnel. Tr. 707. Dr. Choi diagnosed meralgia paresthetica on the right side, low back pain, and diabetic neuropathy with decreased sensation in both feet. Tr. 708. Following an EMG study, there was evidence of mild peripheral neuropathy, with no evidence of any significant radiculopathy in her lower extremeties. Tr. 763, 779. Indeed, Dr. Choi's treatment notes from September 2014 indicate that Plaintiff complained of tingling in her thighs, with sensory deficit on the left side, but "there is quite a bit of giveaway weakness." Tr. 802. Dr. Choi indicated that Plaintiff's recent MRI scan "does not show any evidence of encroachment of the L3 neural foramen." Tr. 802. Dr. Choi recommended that Plaintiff inquire about an injection for her hip, and opined that he does not believe Plaintiff "has any significant radiculopathy or any nerve problem other than mild peripheral neuropathy, which I think is actually better as she appears to have good sensation in her toes now." Dr. Choi recommended Plaintiff follow up in six months. Tr. 802. At no point did Dr. Choi indicate that Plaintiff's mild peripheral neuropathy warranted a walker.

In short, as the ALJ indicated, the objective medical findings do not support the severity of Plaintiff's alleged walking and hand functioning limitations. The ALJ's findings are wholly supported by substantial evidence in the record, and further bolster the ALJ's adverse credibility determination. Accordingly, the ALJ did not err.

## II.   The ALJ Did Not Improperly Evaluate the Medical Evidence

### A.   Standards

In general, the opinion of a treating physician is given more weight than the opinion of an examining physician, and the opinion of an examining physician is afforded more weight than the opinion of a nonexamining physician. *Ghanim,* 763 F.3d at 1160; *Garrison,* 759 F.3d at 1012; *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007). "If a treating physician's opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, [it will be given] controlling weight." *Orn,* 495 F.3d at 631 (internal quotations omitted) (alterations in original); 20 C.F.R. §§ 404.1527(c), 416.927(c). To reject the uncontradicted opinion of a treating physician, the ALJ must provide "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

If the treating physician's opinion is contradicted, the ALJ must consider how much weight it is entitled to considering the factors in 20 C.F.R. § 404.1527(c)(2-6). The factors include the length of the treatment relationship, the frequency of examination, the nature and supportability of the opinion, and its consistency with other evidence in the record as a whole. 20 C.F.R. § 404.1527(d)(2-6); *Ghanim*, 763 F.3d at 1161. If a treating or examining doctor's opinion is contradicted by another doctor's opinion, it may be rejected by specific and legitimate reasons.

13 - OPINION AND ORDER

*Ghanim*, 763 F.3d at 1161. However, "[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002).

### B.     The ALJ Did Not Err in Discounting Dr. Fathie's Opinion

Plaintiff contends that the ALJ erred in discounting the opinion of her treating physician, Arzeo Fathie, M.D. Dr. Fathie was Plaintiff's primary treating physician from 2008 through 2013. On April 15, 2013, Dr. Fathie wrote a letter listing the "multiple medical conditions" that make Plaintiff a "candidate for disability due the combined effects of all the conditions." Tr. 578. Dr. Fathie listed 14 conditions, including diabetes, breast cancer, chronic fibromyalgia, bilateral carpal tunnel, fibromyalgia, morbid obesity, chronic meralgia paresthetica, and others. Dr. Fathie then opined that Plaintiff "is currently unable to work." Tr. 578.

The ALJ considered Dr. Fathie's opinion, and provided three reasons for giving it little weight: (1) the opinion is conclusory and fails to contain any specific functional limitations based on objective findings; (2) the opinion is inconsistent with contemporaneous physical examination findings; and (3) is a determination reserved to the Commissioner. Dr. Fathie's opinion was contradicted by those of Dr. Heder, Mayenne Karelitz, M.D., and Rene Pena, M.D. Because Dr. Fathie's opinion is contradicted, the ALJ was required to provide specific and legitimate reasons, backed by substantial evidence, for discounting it.

Plaintiff contends that the ALJ failed to provide specific and legitimate reasons for discounting Dr. Fathie's opinion. Plaintiff insists that Dr. Fathie provided specific functional limitations based on objective findings and that Dr. Fathie's opinion is consistent with his contemporaneous examination notes and findings.

First, the ALJ reasonably discounted Dr. Fathie's April 15, 2013 opinion because it was conclusory and lacked any specific functional limitations based on objective findings as detailed in the opinion itself. An ALJ need not accept any opinion, even those from a treating physician, that are conclusory and inadequately supported. *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009); *Thomas*, 278 F.3d at 957. Reviewing Dr. Fathie's brief letter confirms the ALJ's finding that it simply lists Plaintiff's assorted conditions, and summarily provides that Plaintiff is unable to work. Tr. 578. The letter contains no explanation supported by objective findings by Dr. Fathie for reaching the conclusion that Plaintiff is unable to work. Thus, the court determines that the ALJ reasonably discounted Dr. Fathies' opinion because it fails to identify any specific functional limitations of Plaintiff's abilities supported by objective findings. Therefore, the ALJ has identified a specific and legitimate reason for discounting Dr. Fathie's April 2013 opinion that is supported by substantial evidence.

Second, the ALJ discounted Dr. Fathie's opinion that Plaintiff is unable to work because it is inconsistent with contemporaneous treatment notes. Inconsistency between a physician's treatment notes and the physician's opinion is a specific and legitimate basis to discount it. *Tommasetti*, 533 F.3d at 1041. Here, the ALJ specifically discussed Dr. Fathie's April 15, 2013 treatment note in which Dr. Fathie observed Plaintiff to be alert, active, healthy-appearing, that Plaintiff presented with a normal mood and affect, and ambulated normally. Tr. 22, 579. The ALJ indicated that Dr. Fathie's treatment notes reflect that Plaintiff complained of overall tenderness, but she had no cyanosis, varicosities, or edema. And, the ALJ noted that Dr. Fathie's treatment note shows that despite some abnormal sensations in her lower extremities, she had normal muscle strength, normal gait and station, and her deep tendon reflexes were normal. As discussed above

with respect to Plaintiff's credibility, Dr. Fathie's treatment notes consistently reflect that Plaintiff's ambulation, muscle strength and tone, and gait and station are normal, and that she had a normal mood and affect. *See, e.g.,* Tr. 417, 425, 440, 448, 470, 476, 480, 585, 595, 603, 610, 617, 626, 636, 643, 651, 661, 668, 678, 685, 692, 700. Thus, these findings are backed by substantial evidence. The Court concludes that the ALJ reasonably determined that Dr. Fathie's opinion that Plaintiff is unable to work is inconsistent with large portions of Dr. Fathie's treatment notes. Thus, the ALJ has provided a specific and legitimate reason for discounting Dr. Fathie's opinion. *Tommasetti*, 533 F.3d at 1041.

Indeed, as discussed by the ALJ, Dr. Fathie's April 15, 2013 treatment note shows that Plaintiff's chief complaint was to obtain a dermatology referral, review lab results, and refill prescriptions. Tr. 579. Dr. Fathie indicates that Plaintiff complained of shoulder pain, wrist pain, diffuse finger pain, lumbar pain and thigh tingling and numbness. Tr. 583. Plaintiff acknowledged that an injection to her shoulder was helpful, but that her shoulder pain was returning. Dr. Fathie's notes reflect that Plaintiff was not entirely compliant and consistent with taking her cholesterol and triglyceride medications, and that she did not complete her blood sugar or blood pressure logs. Tr. 583. Although the ALJ incorrectly stated that Plaintiff did not have edema in her lower extremities, contrary to Plaintiff's contention, the ALJ correctly stated that Plaintiff's reflexes were consistently normal. Tr. 22, 585.

Plaintiff insists that Dr. Fathie's opinion that Plaintiff is unable to work is substantiated by the bulk of Dr. Fathie's treatment notes, reflecting that Plaintiff complained of assorted arthralgias, back pain, numbness, and fatigue. Plaintiff contends that Dr. Fathie's treatment note of May 10, 2012 is consistent with the opinion that Plaintiff is unable to work. In that treatment note, Dr. Fathie

indicates that Plaintiff reported her back pain was a nine or 10 on a 10 point scale, she reported difficulty grocery shopping, difficulty cooking, and that she cannot stand for more than one hour. Tr. 650-51. According to Plaintiff, Dr. Fathie's treatment note reflects that an April 23, 2012 MRI indicated severe foraminal stenosis and herniated discs. Tr. 651.

This is a close case, and the record could support Plaintiff's alternative interpretation. However, the record as a whole also supports the ALJ's determination. As the ALJ indicated, Dr. Fathie's opinion that Plaintiff is not able to work is not fully supported by objective medical findings elsewhere in the record. Dr. Fathie referred Plaintiff to other specialists for evaluation of her pain complaints. Yet, that objective testing does not fully support the severity of Plaintiff's symptoms or Dr. Fathie's opinion. Contrary to Plaintiff's complaints of pain in her shoulder and lower extremities, EMG/nerve conduction studies ordered by Dr. Fathie were negative for lumbar radiculopoathy, and Dr. Mullen in January 30, 2013, found that Plaintiff ambulated with a normal stride, could tandem walk, and had 5/5 motor strength with normal tone. Tr. 440. To be sure, despite Plaintiff's allegations of pain, she was consistently observed to ambulate normally. *See, e.g.,* Tr. 417, 425, 440, 448, 470, 476, 480, 585, 595, 603, 610, 617, 626, 636, 643, 651, 661, 668, 678, 685, 692, 700. Furthermore, although an April 23, 2012 MRI of Plaintiff's lumbar spine appeared to show some nerve root displacement at L5-S1, a more recent 2014 MRI "does not show any evidence of encroachment on the L3 neural foramen.[2] Tr. 489, 802.

---

[2] The March 17, 2014 lumbar MRI does not appear to be part of the record. Additionally, Plaintiff does not identify the MRI in the transcript or cite to it in her briefing. *See* Pl.'s Br. 8-10, ECF No. 13. Instead, the March 17, 2014 lumbar MRI is mentioned by Dr. Choi who indicated there was no evidence of encroachment. Tr. 802. And, the March 17, 2014 lumbar MRI is noted by Marat Gadzhiev, M.D., who indicated in his there were degenerative changes at L5-S1 with disk protrusion and facet hypertrophy, with mass effect. Tr. 783.

Based on the Court's careful review, the ALJ's findings are supported by substantial evidence in the record as a whole. Even if the evidence could be interpreted differently, the ALJ's interpretation is rational, and based on reasonable inferences drawn from the record. Accordingly, the Court will not engage in second-guessing. *Tommasetti*, 533 F.3d at 1039.

Finally, the ALJ observed that Dr. Fathie's opinion that Plaintiff is unable to work is reserved to the Commissioner, and gave it little weight. Tr. 22. It is true that a treating physician's statement on an issue reserved to the Commissioner, such as the determination of a claimant's ultimate disability, is not binding on the ALJ or entitled to special weight. 20 C.F.R. §§ 404.1527(d)(1) ("A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled."), 416.927(d)(1) (same); SSR 96-5p, 1996 WL 374183, at *5 (treating-source opinions that a person is disabled or unable to work "can never be entitled to controlling weight or given special significance"); *see also McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011) ("A disability is an administrative determination of how an impairment, in relation to education, age, technological, economic, and social factors, affects ability to engage in gainful activity."). Here, the ALJ provided several reasons, backed by substantial evidence, for rejecting Dr. Fathie's opinion that Plaintiff is unable to work. Therefore, the ALJ did not err in rejecting Dr. Fathie's opinion on this basis.

In short, the ALJ has provided specific and legitimate reasons, backed by substantial evidence in the record as whole, for discounting Dr. Fathie's opinion. "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

C.    *The ALJ Did Not Err in Evaluating Dr. Prescott's Opinion*

Alison Prescott, Ph.D., performed a psychodiagnostic evaluation of Plaintiff on October 7, 2014.  In that evaluation, Plaintiff reported to Dr. Prescott that her primary impediment to working is her chronic pain from cancer, fibromyalgia, gout, arthritis, and neuropathy.  Tr. 751-52.  Plaintiff informed Dr. Prescott that her health has deteriorated since being diagnosed with breast cancer and diabetes approximately five years earlier.  Plaintiff indicated that her blood sugars are not stable, her carpal tunnel surgery did not go well, and that she cannot grasp or pick up any weight.  Tr. 752.  Plaintiff also reported to Dr. Prescott that she has a great deal of problems with her right leg, and that she needs a cane or walker to walk.  Tr. 752.  Plaintiff indicated that her pain level is typically a seven on a 10 point scale, and that she can stand for only 10 minutes.  Tr. 752.  Plaintiff stated that she has depression from her chronic pain, as well as panic and anxiety.  Tr. 752.  Plaintiff reported that she does not perform any household chores, cannot read, does not use the computer, and cannot bathe or get dressed without assistance.  Tr. 753.

Dr. Prescott observed that Plaintiff ambulated slowly and used a cane, her speech was slow and rambling, her affect restricted and mood irritable, and she was tearful at times.  On testing, Plaintiff had good short term memory, had some impairment with concentration, and had average intellectual functioning.  Tr. 753.  Dr. Prescott diagnosed Plaintiff with major depressive disorder and a panic disorder.  Tr. 753.

Dr. Prescott also completed a Medical Source Statement dated October 19, 2012, in which she opined that Plaintiff has no limitations in understanding, remembering, and carrying out simple instructions and make simple work-place judgments.  Tr. 755.  Dr. Prescott opined that Plaintiff was markedly limited in her ability to understand, remember and carry out complex instructions and

make complex work-related decisions. Tr. 755. Dr. Prescott assessed that Plaintiff is moderately limited in her ability to interact appropriately with the public, co-workers, supervisors, and to appropriately respond to usual work situations or changes in routine. Tr. 756. Dr. Prescott indicated her limitations in this area were due to Plaintiff's poor coping skills and social functioning due to her chronic pain. Tr. 756. Additionally, Dr. Prescott opined that Plaintiff's ability to work an eight hour day and manage normal work stress was limited due to her physical limitations of walking, standing, and inability to perform daily routines without help from her daughter. Tr. 756.

In the decision, the ALJ accurately summarized Dr. Prescott's opinions and evaluation. The ALJ gave significant weight to the portion of Dr. Prescott's evaluation demonstrating Plaintiff's good memory function, with some limits in concentration. Tr. 24. The ALJ found this portion of Dr. Prescott's opinion consistent with Plaintiff's mental status results and Plaintiff's presentation. Tr. 24. However, the ALJ gave less weight to Dr. Prescott's opinion that Plaintiff could not complete an eight hour workday and manage normal work stress because it is inconsistent with the objective examination itself, is based upon Plaintiff's discredited subjective complaints, and is inconsistent with the physical examination of Dr. Heder.

It is well settled that an ALJ may reject a doctor's opinion "'if it is based to a large extent on a claimant's self-reports that have been properly discounted as incredible.'" *Burrell v. Colvin*, 775 F.3d 1133, 1141 (9th Cir. 2014) (quoting *Tommasetti*, 533 F.3d at 1041). "However, when an opinion is not more heavily based on a patient's self-reports than on clinical observations, there is no evidentiary basis for rejecting the opinion." *Ghanim*, 763 F.3d at 1162.

Plaintiff contends that the ALJ erred in rejecting a portion of Dr. Prescott's opinion and Medical Source Statement. Plaintiff argues that Dr. Prescott's opinion was not based upon

Plaintiff's discredited self-reports, but was instead based upon Dr. Prescott's clinical observations. The Court disagrees.

Contrary to Plaintiff's contentions, the ALJ could reasonably find Dr. Prescott's opinion that Plaintiff is not capable of handling an eight hour work day and work stressors is based on Plaintiff's incredible self-reports. Indeed, in the Medical Source Statement when asked to identify factors to support her assessment that Plaintiff cannot work eight hours a day or manage normal work stressors, Dr. Prescott acknowledged as much, stating "[Plaintiff] has physical limitations with walking, standing, and daily routines. She needs help from her daughter." Tr. 756. As discussed above with respect to credibility, Plaintiff's statement to Dr. Prescott that she is unable to get dressed and bathe without assistance from her daughter was directly contradicted by Plaintiff's hearing testimony approximately five weeks earlier that she could perform such tasks without help. *Compare* Tr. 61-62 *with* Tr. 753, 756. And, as the ALJ discussed, Plaintiff's statement to Dr. Prescott that her carpal tunnel surgery did not go well and that she could not grasp or pick up items was undermined by Dr. Heder's contemporaneous examination demonstrating normal grip strength and manipulation abilities. Tr. 805. Additionally, Plaintiff's statements are undermined by Dr. Fedorov's post-operative notes indicating that Plaintiff was doing well after surgery and she had normal sensation in all fingers. Tr. 741. As the ALJ discussed, Plaintiff appeared at Dr. Prescott's evaluation ambulating slowly with cane, whereas at Dr. Heder's contemporaneous examination, Plaintiff was observed to ambulate without difficulty, removed her sandals without difficulty, and easily transferred from the chair to the examination table. Tr. 740. To be sure, as the ALJ indicated, Dr. Prescott performed no physical capacities testing during the mental status examination. Tr. 751-54. As discussed at length above, the ALJ appropriately discounted Plaintiff's credibility in part based

upon her questionable presentation to Dr. Prescott. And, because Dr. Prescott's psychodiagnositic evaluation specifically relied upon Plaintiff's unreliable statements about her physical capacities to opine that she is not capable of working for eight hours, the ALJ has provided a specific and legitimate reason, backed by substantial evidence, for discounting that portion of Dr. Prescott's opinion. *Bray*, 554 F.3d at 1228; *Tommasetti*, 533 F.3d at 1041. The ALJ did not err.

Finally, the ALJ appropriately credited the portion of Dr. Prescott's opinion indicating that Plaintiff had some limits in concentration based on mental status testing. Tr. 24. In the narrative opinion, Dr. Prescott indicated that Plaintiff showed "impairment with concentration," finding that Plaintiff was able spell "world" backwards, had difficulty performing serial 7's after 93, but was able to perform serial 3's from 20 slowly. Dr. Prescott also found that Plaintiff could name four Presidents since 1950, could not add a multi-digit number in her head, and could report only two digits backwards. Tr. 753. Based on these results, Dr. Prescott opined in the Medical Source Statement that Plaintiff had "no limitations" in understanding, remembering and carrying out simple instructions, but had marked limitations in her ability to understand, remember, and carry out complex instructions and make judgments on complex work-related decisions. Tr. 755. In the decision, the ALJ concluded that Plaintiff only had moderate limitations with concentration, persistence and pace based on Dr. Prescott's mental status findings. Tr. 18. Contrary to Plaintiff's suggestion, the ALJ specifically discounted the limitations in the Medical Source Statement that were inconsistent with Dr. Prescott's objective clinical findings. Tr. 24, 755. Having carefully reviewed the Dr. Prescott's Medical Source Statement and the clinical findings, in conjunction with the very limited evidence of mental health treatment, the ALJ could reasonably find that Dr. Prescott's opinion that Plaintiff has marked limitations with concentration, persistence and pace is

inconsistent with the objective findings, and appropriately discounted them on that basis. *Tommasetti*, 533 F.3d at 1041 (inconsistency between treatment notes and opinion is a specific and legitimate reason for discounting opinion). Because the ALJ's findings are supported by substantial evidence in the record as whole, the ALJ's has provided a specific and legitimate reason for partially rejecting Dr. Prescott's opinion.

  D. *The ALJ Did Not Commit Harmful Error in Failing to Discuss Dr. Fedorov's Treatment Notes*

  Plaintiff argues that the ALJ erred in failing to discuss the medical evidence from Alec Fedorov, M.D., the physician who performed Plaintiff's right hand carpal release surgery in August 2014. Tr. 827. Plaintiff correctly states that the ALJ did not discuss Dr. Fedorov's treatment notes. The Commissioner acknowledges the error, but contends that any error is harmless because Plaintiff's carpal tunnel release surgery successfully resolved her symptoms.[3] The court agrees.

  An ALJ errs by ignoring the opinion of a treating physician. *Marsh v. Colvin*, 792 F.3d 1170, 1172 (9th Cir. 2015). However, "ALJ errors in social security cases are harmless if they are inconsequential to the ultimate nondisability determination and that a reviewing court cannot consider [an] error harmless unless it can confidently conclude that no reasonable ALJ . . . could have reached a different disability determination." *Marsh*, 792 F.3d at 1173 (internal quotations and citation omitted). An ALJ's determination may be upheld where the "'the agency's path may be reasonably discerned, even if the agency explains its decision with less than ideal clarity.'" *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (quoting *Treichler v. Comm'r Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014)). In this instance, the ALJ's path is readily discerned.

---

  [3] Plaintiff did not respond to the Commissioner's argument that the error is harmless.

In August 2014, Dr. Fedorov indicated that Plaintiff's EMG/nerve conduction studies confirmed bilateral carpal tunnel syndrome, severe on the right, mild on the left. Tr. 726-28. Dr. Fedorov's examination showed that Plaintiff had decreased sensation to touch in median nerve distribution, but no weakness of grip strength or pinch strength. Tr. 726. Dr. Fedorov opined that Plaintiff is "very disabled by her bilateral carpal tunnel as it makes it difficult for her to use both hands." Tr. 728. Dr. Fedorov recommended right hand carpal tunnel release surgery; the surgery was performed the following month. Tr. 728, 805. Two weeks after the surgery, Dr. Fedorov's September 18, 2014 treatment notes show that Plaintiff's right hand was doing well, she could make a fist, and she had normal sensation in all fingers. Tr. 805. There are no other treatment notes from Dr. Fedorov.

In the decision, the ALJ on multiple occasions discussed the fact that Plaintiff is post-status carpal tunnel release surgery. For example, at step two, the ALJ identified "moderate carpal tunnel syndrome, status-post right side release" as a severe impairment. Tr. 15. Additionally, at step three, the ALJ discussed that Plaintiff's moderate carpal tunnel, status-post right side release did not meet Listing 1.02(B), major dysfunction of a joint. Tr. 17. Indeed, the ALJ discussed that the evidence did not show that Plaintiff has a gross anatomical deformity in connection with chronic pain and limited motion that result in her inability to perform fine and gross movements effectively. Tr. 17. The ALJ then thoroughly discussed the consultative physical capacities examination conducted by Dr. Heder on September 23, 2014 when assessing Plaintiff's RFC. Tr. 737. To be sure, Dr. Heder's thorough examination of Plaintiff's gross and find motor skills was performed just five days after Dr. Fedorov's last examination. As the ALJ found, Dr. Heder indicated that Plaintiff could grasp and manipulate large and small objects with the first three digits of her hands, and that there was no

evidence of myotonia, grip release, localized tenderness, erythema, effusion, or diminution of function with repetition. Tr. 17. Indeed, based on Plaintiff's carpal tunnel syndrome and testing results, Dr. Heder limited Plaintiff to frequent handling, fingering and feeling, and the ALJ gave significant weight to that portion of Dr. Heder's opinion – a finding not challenged by Plaintiff. The ALJ's findings are wholly supported by substantial evidence. Tr. 741. Moreover, as discussed at length above, the ALJ did not err in discounting Plaintiff's subjective symptoms of her hand functioning based on Dr. Heder's examination.

Therefore, the sole basis for Dr. Fedorov's pre-operative opinion that Plaintiff was disabled was successfully resolved by the right side carpal tunnel release surgery – facts the ALJ repeatedly and adequately discussed. Additionally, based on Drs. Fedorov and Heder's post-surgical examinations, no reasonable ALJ would reach different disability determination concerning Plaintiff's hand functioning. Therefore, not only can the agency's path be readily discerned, the court can confidently conclude that the error in failing to discuss Dr. Fedorov's pre-operative opinion and treatment notes was harmless. *Marsh*, 792 F.3d at 1173; *Molina*, 674 F.3d at 1115; *accord Robinson v. Berryhill*, ___ F. App'x ___, 2017 WL 1735280, *2 (9th Cir. May 3, 2017) (finding harmless error where ALJ failed to discuss opinion of treating doctor).

## III. The Hypothetical to the VE included All of Plaintiff's Credited Limitations

Plaintiff asserts that the ALJ's RFC and attendant hypothetical posed to the VE failed to account for her deficits in concentration. Pl.'s Opening Br. 15, ECF No. 13. The ALJ's RFC assessment represents all of a claimant's work-related limitations, including non-severe limitations. 20 C.F.R. §§ 404.1545(a)(1-2); 416.945(a)(1-2). An RFC restricting a claimant to "simple" tasks,

if based upon the record, may be consistent with a moderate or mild limitation in concentration, persistence, and pace. *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1173-74 (9th Cir. 2008).

In this case, at step three, the ALJ's found that Plaintiff has "moderate" limitations in concentration, persistence, and pace. Tr. 18. In the RFC, the ALJ indicated that Plaintiff is "able to understand, remember, and carry out simple instructions." Tr. 19. Plaintiff appears to suggest that the RFC limiting Plaintiff to simple instructions fails to account for Dr. Prescott's concentration limitations, and the ALJ's assessed moderate limitations at step three. Pl.'s Br. 15, ECF No. 13.

This court has found that such a work restriction alone, without further explanation by the ALJ, does not adequately capture a "moderate" limitation in concentration, persistence, and pace. *See Lee v. Colvin*, 80 F.Supp.3d 1137, 1150-51 (D. Or. 2015) (concluding that moderate limitation in concentration, persistence, and pace was not addressed by ALJ, included in RFC or hypotheticals to vocational expert); *Brink v. Comm'r Soc. Sec. Admin.*, 343 F. App'x 211, 212 (9th Cir. 2009) (finding the ALJ erred by accepting that claimant had limitations as to concentration, persistence, or pace but failing to include such limitations in the RFC and hypothetical questions to vocational expert); *Abrego v. Comm'r Soc. Sec. Admin.*, No. CIV. 99-6173-JO, 2000 WL 682671, *3 (D. Or. May 25, 2000) (finding hypothetical posed by the ALJ failed to fully and accurately state claimant's deficiencies in concentration, persistence, or pace). The court finds these cases distinguishable.

On August 24, 2012, Susan Kotler, Ph.D., a reviewing psychologist for Disability Determination Services ("DDS"), found that Plaintiff has "mild" restrictions in concentration, persistence, and pace in the psychiatric review technique utilized for assessing the "B" criteria for psychological impairments. Tr. 95. However, later in a more detailed assessment of Plaintiff's functioning, Dr. Kotler specifically indicated that Plaintiff has not received any specific mental

health treatment aside from medications. Tr. 95. Dr. Kotler opined that Plaintiff should be able to sustain concentration, persistence and pace for all levels of task complexity, and that her mental impairments were nonsevere. Tr. 95. On reconsideration, Pastora Roldan, Ph.D., another reviewing psychologist for DDS, likewise found Plaintiff had mild limitations with concentration persistence and pace for the "B" critera. Tr. 132. Similarly, Dr. Roldan provided additional detail when assessing Plaintiff's mental health functioning, indicating that Plaintiff has been on medication for anxiety and depression, but had not received mental health treatment. Tr. 132. Dr. Roldan opined that Plaintiff could sustain concentration, persistence and pace for all levels of task complexity, and that her mental impairments were nonsevere. Tr. 132.

In the decision, at step three, the ALJ found that Plaintiff had moderate limitations in concentration, persistence, and pace for purposes of the "B" findings, in part based on Dr. Prescott's evaluation. Tr. 18. Later, when assessing Plaintiff's RFC, the ALJ discounted Plaintiff's subjective allegations, and credited that portion of Dr. Prescott's opinion providing that Plaintiff has no limitations in her ability to make judgments on simple, work-related decisions. The ALJ discounted Drs. Kotler and Roldan's opinions that Plaintiff's mental health impairments were nonsevere based on Dr. Prescott's updated evidence. Tr. 22. As discussed above, the ALJ's findings are supported by substantial evidence.

In *Stubbs-Danielson*, the Ninth Circuit held that "an ALJ's assessment of a claimant adequately captures restrictions related to concentration, persistence, or pace where the assessment is consistent with restrictions identified in the medical testimony." *Id.* at 1174. Here, the ALJ accepted medical testimony from Dr. Prescott that Plaintiff has no limitations to perform simple work, and rejected more severe limitations assessed by Dr. Prescott and Plaintiff's similar subjective

complaints. Indeed, Dr. Prescott identified no other limitations stemming from concentration deficits and identified no specific limitations with persistence or pace. Tr. 755-56. The cases cited by Plaintiff caution only that an ALJ must explain how a "simple" work restriction adequately captures a "moderate" limitation in concentration, persistence and pace. Here the ALJ gave such an explanation. The ALJ's RFC limiting Plaintiff to simple instructions adequately captures her "moderate" limitations with concentration persistence and pace.

Therefore, unlike *Abrego* and akin to *Stubbs-Danielson*, the accepted medical testimony reflects that Plaintiff would have moderate limitations with detailed tasks, but she has no limitations in her ability to understand, remember and carry out and maintain concentration, persistence, and pace for simple work. Tr. 22. Thus, the RFC adequately reflects the accepted medical testimony, is supported by substantial evidence in the record as a whole, and therefore, the ALJ did not err. *Stubbs-Danielson*, 539 F.3d at 1174; *see also Bray,* 554 F.3d at 1228-29 (ALJ did not err where RFC adequately accounted for limitations on detailed tasks); *Mitchell v. Colvin,* 642 F.App'x 731, 732-33 (9th Cir. 2016) (moderate limitations in concentration, persistence and pace adequately captured in RFC limiting claimant to simple work); *Hartman v. Astrue*, Case No. 3:10-cv-06305-ST, 2011 WL 7452802, *8-9 (D. Or. Dec. 2, 2011) (same).

////

////

////

////

////

////

**CONCLUSION**

For the reasons set forth above, the Commissioner's final decision denying benefits to Plaintiff is AFFIRMED. This action is DISMISSED.

IT IS SO ORDERED.

DATED this 7 day of JUNE, 2017.

*Malcolm F Marsh*
Malcolm F. Marsh
United States District Judge